In the Matter of SOL TAPPER, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, June 26, 1984

##### APPEARANCES OF COUNSEL

*Claudio B. Bergamasco* of counsel (*Michael A. Gentile,* attorney), for petitioner.

*Alan K. Hirschhorn, P. C.,* for respondent.

##### OPINION OF THE COURT

*Per Curiam.*

The Departmental Disciplinary Committee has moved for an order confirming the report of a hearing panel which recommended that respondent be suspended from practice for one year, retroactive to February 9, 1984.

Respondent was admitted to practice in the First Department on November 30, 1953. On February 9, 1984, this court suspended him and directed a hearing after the Disciplinary Committee alleged that he had been convicted of a serious crime within the meaning of section 90 of the Judiciary Law.

A hearing was held on March 8, 1984. Respondent had pleaded guilty, on June 16, 1983, to the crime of making a punishable false written statement, in violation of section

210.45 of the Penal Law. He was sentenced to a conditional discharge and fined $250, which he paid on July 19, 1983.

In 1980, respondent purchased a 1979 Ford Mustang, which he insured with The Travelers Insurance Company. In December, 1981, the car was hit from behind by another vehicle. Respondent drove it to Lease Auto Repair Body & Towing Corp. in Manhattan for repair in August, 1982. Respondent knew the owner, a client of his for three years, who owed him a fee. Respondent testified that the owner agreed to repair the car without charge in consideration of forgiveness of the fee. The car remained in the shop until January, 1983, allegedly because parts had to be ordered. Respondent occasionally picked up the car for use on weekends. Some time during this period the shop was sold, but the new owner agreed to repair the car.

In February, 1983, respondent was allegedly informed that the auto had disappeared from the shop. Actually, the car had been impounded as abandoned by the Department of Sanitation on January 10, 1983. On February 27, 1983, respondent spent the day at Aqueduct betting and drinking. On his way home, he stopped at a police station and reported that his car had been stolen in Queens the night before.

Respondent filed a claim with The Travelers based on his report to the police that the car had been stolen. He also submitted to the carrier a bill dated February 8, 1983 from New York Skyports, Inc., which had been altered to indicate that maintenance services were performed by Skyports on his car. In fact, the repairs were performed on his son's car. In addition to the February 27, 1983 police report, respondent also signed a vehicle theft investigation form on April 14 in which he attested that his car had been stolen.

The hearing panel found that respondent pleaded guilty to filing a false police report, and that, in addition, he filed a false insurance claim, even though he was not convicted of same. The panel also stated that the record did not support a finding that respondent had been involved with the repair shop in disposing of the car.

Respondent's excuse for his conduct is that he had been drinking heavily during 1983, and was hospitalized for 58

days for diverticulosis and underwent a colostomy. As already noted, on the day he reported the theft he had been drinking and betting at Aqueduct. He also claims that he was attempting to recover insurance benefits to which he would have been entitled in any event, since if the car was stolen from the repair shop he would have recovered benefits.

In mitigation, the panel found that this was an isolated act of aberrant behavior, and cited other factors including respondent's illness, his activities on behalf of community and charitable organizations, and his continuing care of his dependent adult son, who is totally deaf and apparently has never worked.

Respondent is 64 years old, and apparently has no viable alternative to making a living other than practicing law. For all practical purposes, he has not practiced law since before he went into the hospital in the summer of 1983. He was hospitalized for 58 days in August and September, 1983, housebound for most of October and November, and limited to caretaker status from December, 1983 until his suspension on February 9, 1984. He has no other complaints against him in his 30 years at the Bar. On the basis of the credited facts, he was entitled, at the time he reported the "theft", to recover insurance benefits from either his insurer or the repair shop's insurer.

Respondent's personal problems — his wife's lengthy and ultimately fatal illness, his own illness, which has prevented him from working for some time, and his son's handicap — lead us to the conclusion that any lengthy suspension would result in severe deprivation. In the circumstances, a suspension of six months is appropriate. Respondent is the sole support of his son. Inasmuch as he has been suspended since February 9, and before that spent much time in the hospital or recovering at home, he has not practiced law for the better part of the last year. In many instances of false swearing, the attorney has been suspended for one year, as the hearing panel recommended. (See, e.g., *Matter of Schleimer,* 69 AD2d 142; *Matter of Field,* 63 AD2d 507.) In another situation, a one-year suspension might be appropriate. In this case, however, six months should serve a significant deterrent and

punitive purpose without destroying respondent's means of livelihood permanently.

Accordingly, respondent should be suspended from the practice of law for a period of six months retroactive to February 9, 1984, and until further order of this court.

SANDLER, J. P., SULLIVAN, ASCH, BLOOM and KASSAL, JJ., concur.

Motion granted only insofar as to suspend respondent from practice as an attorney and counselor at law in the State of New York for a period of six months retroactive to February 9, 1984, and until the further order of this court.