[772 NYS2d 9]

In the Matter of Scott L. Wiss (Admitted as Scott Lawrence Wiss), an Attorney, Respondent. Departmental Disciplinary Committee for the First Judicial Department, Petitioner.

First Department, January 29, 2004

#### APPEARANCES OF COUNSEL

*Thomas J. Cahill (Raymond Vallejo* of counsel), for petitioner. *Michael S. Ross* for respondent.

#### OPINION OF THE COURT

Per Curiam.

Respondent was admitted to the practice of law in New York

by the Second Judicial Department on December 11, 1991. At all times relevant to the charges, he maintained an office for the practice of law within the Second Judicial Department; however, respondent currently maintains his law office within this Judicial Department.

Respondent was charged in an indictment filed on December 3, 2001 in Supreme Court, Queens County, with insurance fraud in the third degree, a class D felony, in violation of Penal Law § 176.20; employing an individual to illegally solicit clients in violation of Judiciary Law § 482; and notary public fraud in violation of Executive Law § 135-a (2). On October 10, 2002, respondent pleaded guilty to the reduced charge of insurance fraud in the fifth degree, a class A misdemeanor (Penal Law § 176.10), in full satisfaction of the charges. On that same date respondent was sentenced to a one year conditional discharge and directed to make restitution in the sum of $5,000, which has been paid.

By an unpublished order entered February 3, 2003, this Court granted the Departmental Disciplinary Committee's motion and determined that respondent had been convicted of a "serious crime" and directed a hearing be held regarding the appropriate sanction.

A Hearing Panel held a hearing on April 10, 2003, at which respondent presented the testimony of four character witnesses and also testified on his own behalf and fully admitted the misconduct that resulted in his misdemeanor plea. At the conclusion of the hearing, counsel for the Committee and respondent jointly recommended a six-month suspension. In its report dated September 17, 2003, the Panel recommended respondent be suspended for a period of nine months.

The charges against respondent arose from a fictitious personal injury case involving an individual named "Joseph Rousseau," who was an undercover officer investigating insurance misconduct at a medical clinic. On January 10, 2001, respondent sent one of his paralegals, Boris Aliev, to meet with a potential client, Joseph Rousseau, who was being treated at a Brooklyn medical clinic. Someone from the clinic had called respondent's office indicating that the clinic had recommended his firm to Rousseau and that he wanted to meet with someone from respondent's firm at the clinic. Because respondent was unable to meet with Rousseau, he sent Mr. Aliev who had Rousseau sign several blank forms including a retainer agreement, a no-fault application, standard medical releases and a notice of

intent to make a claim. However, the medical releases and notice of intent to make a claim were never notarized as required. Two and a half months later, as the 90-day no-fault filing deadline approached, respondent "panicked" realizing that they had not been notarized and his firm unsuccessfully tried to reach Rousseau.

Respondent testified that he was concerned as to the consequences of his malpractice (and the several thousands of dollars in medical bills which would not be reimbursed), and told a staff member to falsely notarize the aforementioned documents using respondent's notary stamp, which also bore his signature. These forms were then filed with GEICO insurance company which was attempting to settle the case with respondent's office. Subsequently respondent filed a retainer statement with the Office of Court Administration (OCA), prepared by a paralegal but signed by him, falsely stating that Rousseau had been referred to his firm through an advertisement. By waiting too long to check on Rousseau's file respondent resorted to falsely notarizing documents and admitted that he was "afraid of what I had done. I was trying to cover it up," and that it had never happened before. Respondent further acknowledged that he never met nor spoke with Rousseau and that he did not contact GEICO to try to obtain an extension of time beyond the 90-day deadline in order to file the no-fault application.

Compounding the mishandling of Rousseau's case was the fact that a part-time law student who was interning in respondent's office made an oral representation to a GEICO representative that Rousseau had refused a settlement offer, in part, because he had missed days from work as a result of the accident when, in fact, Rousseau had never had any such communication with respondent's office. Respondent testified that although he had authorized the student to engage in settlement negotiations with insurance companies he did not instruct him to make this false statement and respondent admitted that he was ultimately responsible for his employee's acts. The Hearing Panel noted that neither Boris Aliev nor the law student testified at the hearing.

In their joint submission, respondent and the Committee agreed, and the Panel concluded, that respondent fully admitted that he: falsely notarized documents in order to advance his own interests; failed to supervise his staff regarding their discussions with GEICO resulting in false statements designed to improperly secure insurance payments; and had his office file a

retainer statement which he had signed with OCA, which knowingly contained inaccurate information.

In considering factors in mitigation the Panel noted that respondent is 37 years old and has two young children. When he was a full-time college student respondent also worked full-time as a skycap at MacArthur Airport in the early mornings and at night, and as a waiter on weekends. After graduating from law school in 1991, respondent worked for a number of firms both defending and prosecuting civil cases. Eventually, in 1999, he opened his own private practice which handles slip and fall cases, personal injury actions arising out of automobile accidents, some civil work and real estate closings. He is assisted by per diem attorneys, and by several paralegals who meet with clients when respondent is not in the office, investigate accident locations, meet with potential clients, and assist in the execution of necessary paperwork.

In addition, the Panel concluded that respondent's evidence was "comprehensive and credible," including his character evidence, an absence of a prior disciplinary record, full and free disclosure to the Committee and a "cooperative attitude" toward the proceedings; his inexperience; his timely payment to GEICO of a restitution payment of $5,000 (apparently the amount of the "settlement" improperly obtained); and his "unequivocal" expression of remorse. The Panel also found that respondent had made "consistent and beneficial contribution to the community and that he enjoy[ed] a good reputation in his community for truthfulness and integrity." Respondent's character witnesses testified that respondent took full responsibility for his wrongful conduct, which was an aberration from his normal honest character. Respondent also presented letters from 23 individuals attesting to his integrity, his genuine contrition and the devastating consequences that have resulted from his misconduct.

Respondent also introduced evidence of his active community service, which the Panel determined should be considered as a "substantive" mitigating factor. That work included his membership in the Massapequa Lions and Kiwanis Clubs, his pro bono legal service to Variety Children's Learning Center, and his volunteer work with the Mid-Island Lodge of the Knights of Pythias, the last two which help handicapped children. The Panel also found that respondent has already been the subject of public embarrassment and humiliation, which included being taken out of his home in the middle of the night

in handcuffs in front of his wife and children, and pleading guilty. Furthermore, it found that, since this episode, respondent has taken remedial steps with his staff to avoid a reoccurrence of such misconduct.

Although it believed that these factors "temper[ed] somewhat the level of sanction to be imposed in this case" and the Committee and respondent jointly recommended a six-month period of suspension, the Panel, nevertheless, proposed a longer period of suspension of nine months based on the totality of the record, "the application of what we believe to be sound and practical judgment as applied to the facts presented to us and measured against applicable prior decisional law," the existence of both aggravating and mitigating factors, and on what is fair to the public and the bar. In aggravation, the Panel found that respondent knew his conduct was wrong and was motivated by a desire, at the very least, to avoid the consequences of his firm's malpractice, and that he failed to supervise and to ensure that the documents filed were truthful, let alone accurate. An additional mitigating factor noted by the Panel was that there was no evidence of a pattern of misconduct with other cases handled by respondent.

The Committee now seeks an order pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) (2) confirming the findings of fact and conclusions of law of the Hearing Panel and imposing whatever sanction this Court deems just. As to sanction, the Committee argues that there is considerable support for the imposition of a short suspension, presumably the six-month suspension previously suggested by counsel for the Committee. Respondent joins in the Committee's request that this Court confirm the Hearing Panel's findings of fact and conclusions of law, and describes in detail the substantial evidence in mitigation submitted to the Hearing Panel.

Since they were readily admitted to by respondent and supported by the evidence introduced at the hearing, the Hearing Panel's findings of fact and conclusions of law are confirmed. However, as to sanction, while respondent's misconduct was serious, it appears to be aberrational and, in light of the impressive evidence submitted in mitigation, we find that a six-month suspension is warranted, which "should serve a significant deterrent and punitive purpose without destroying respondent's means of livelihood" (*see Matter of Tapper*, 102 AD2d 332, 334-335 [1984]).

Accordingly, the Committee's petition should be granted to the extent of confirming the Hearing Panel's findings of fact

and conclusions of law and disaffirming the recommended sanction and suspending respondent from the practice of law in the State of New York for a period of six months, effective 30 days from the date of this Court's order, and until further order of this Court.

ANDRIAS, J.P., ELLERIN, LERNER, FRIEDMAN and MARLOW, JJ., concur.

Respondent suspended from the practice of law in the State of New York for a period of six months, effective March 1, 2004, and until further order of this Court.