Bar Counsel for the Alaska Bar Association and attorney Jeffrey H. Vance entered into a stipulation for discipline by consent that would result in a six-month suspension from the practice of law and payment of $1,000 in costs. The Bar Association's Disciplinary Board approved the stipulation and now recommends that we do so as well. The facts of Vance's misconduct are set forth in the stipulation, which is attached as an appendix.[1] We take these facts as true,[2] and we apply our independent judgment to the sanctions' appropriateness.[3]
Based on the stipulated facts we agree with the legal analysis-set out in the stipulation-that suspension for six months is the *54 appropriate sanction for Vance's misconduct. Accordingly:
Jeffrey H. Vance is suspended from the practice of law for six months. In addition, Vance shall pay $1,000 to the Alaska Bar Association within 60 days from entry of this order for disciplinary costs and fees incurred in this case.
This order is effective 30 days after issuance pursuant to Alaska Bar Rule 28(c).
Entered by direction of the court.
Appendix
BEFORE THE ALASKA BAR ASSOCIATION
DISCIPLINARY BOARD
STIPULATION FOR DISCIPLINE BY CONSENT
JURISDICTION; AUTHORITY TO CONSENT TO DISCIPLINE
1. Jeffrey H. Vance is a member of the Alaska Bar Association, admitted to practice law by the Supreme Court, and subject to the Alaska Rules of Professional Conduct (ARPCs) and the Alaska Bar Rules, Part II (Rules of Disciplinary Enforcement).
2. The Disciplinary Board and the Supreme Court review this stipulation, and Vance is authorized to consent to discipline, under Alaska Bar Rule 22(h).
BACKGROUND FACTS
3. A driver (Client) was in a car accident in Alaska in October 2014. He hired Law Firm to represent him in a personal injury claim against the other driver, who was insured by Insurance Company.
4. In January 2015, Insurance Company offered to settle Client's claim for $16,372. While the offer was pending, Client died of causes unrelated to the car accident.
5. Vance came to work at Law Firm in 2016 and inherited Client's file. In May 2016 he asked the superior court to appoint Client's elderly mother as his personal representative so she could administer the car accident claim as part of her son's estate. The court issued the order on September 2, 2016, and a few days later the mother accepted Insurance Company's standing offer to settle.
6. On September 15, 2016, Insurance Company sent Vance a release of Client's claim for the mother to sign. He promptly mailed the release to her at her home in New Jersey, and in late September she signed it before a notary public and mailed it back to him.
7. The statute of limitations on Client's claim would expire on October 8, 2016 (a Saturday). By Friday, October 7, the release had not arrived at Vance's office. He contacted the claims officer handling the case for Insurance Company and explained that the release was still in transit from New Jersey. To avoid forcing Vance to file a lawsuit that day, and because the statute of limitations expired on a Saturday (when the court was closed), the claims officer agreed that Insurance Company would accept the release if they received it the following business day, Monday, October 10; they would not agree to extend the time further.
8. On Monday the release still had not arrived at Vance's office. He fabricated a substitute release by copying the mother's signature from another document, obtained a notary seal from the desk of a colleague who was on vacation, and used the seal to notarize the false release. He delivered the release to Insurance Company on the morning of October 10 and in return received the settlement check.
9. That afternoon Insurance Company's claims officer examined the release and noticed that the notarization stamp was for a notary public in Alaska not New Jersey, yet the mother's signature and the notary's signature appeared to be signed with the same ink. The claims officer phoned Vance and questioned the authenticity of the release. Vance admitted his role. The claims officer rejected the release and Insurance Company stopped payment on its settlement check.
10. Vance immediately informed the senior partner of his law firm about his conduct. Later that afternoon Vance filed a timely *55 lawsuit to preserve Client's claim. Vance then resigned from the firm.
11. Law Firm continued to represent Client's estate. According to court records and Insurance Company's claims officer, the estate and the defendant settled the lawsuit before the defendant filed an answer to the complaint, on the same terms as the original offer. Insurance Company did not hire a defense lawyer or incur any legal fees or expenses from the lawsuit. According to the senior partner at Law Firm, the firm waived its contingent fee and Client's estate received the entire settlement.
12. The Alaska Attorney General's office investigated Vance's conduct and charged him with an attempt to commit a fraudulent or criminal insurance act ( AS 11.31.100(a) ; AS 21.36.360(p)(2) ), a Class A misdemeanor. Under an agreement with the state, the district court imposed a "suspended entry of judgment" with one year of probation. This means that if Vance successfully completes probation the court will not enter a judgment of guilt but will dismiss the charges. As conditions of probation, Vance must pay a $1,000 fine and perform 80 hours of community work service. As specified in Alaska Bar Rule 26, the clerk of court notified the Bar of Vance's suspended entry of judgment; the Bar forwarded the information to the Supreme Court to decide if Vance committed a serious crime warranting immediate interim suspension.
ALLEGATIONS OF MISCONDUCT
Criminal Conduct Adversely Reflecting On A Lawyer's Honesty, Trustworthiness, And Fitness ( ARPC 8.4(b) ).
13. Alaska Rule of Professional Conduct 8.4(b) states that it is professional misconduct for a lawyer to commit a criminal act that adversely reflects on the lawyer's honesty, trustworthiness, or fitness to practice law. A conviction is not required to impose discipline under the rule. Vance admits that he violated ARPC 8.4(b).
Dishonesty, Fraud, Deceit, Or Misrepresentation ( ARPC 8.4(c) ).
14. Alaska Rule of Professional Conduct 8.4(c) states that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. Vance admits that he violated ARPC 8.4(c).
SANCTION ANALYSIS
15. The sanction for Vance's misconduct is first evaluated using the American Bar Association Standards for Imposing Lawyer Sanctions (1986, amended 1992), adopted in In re Buckalew , 731 P.2d 48 (Alaska 1986). Under ABA Standard § 3.0, these factors are considered: (a) the duty violated; (b) the lawyer's mental state; (c) actual or potential injury caused by the misconduct; and (d) facts in aggravation or mitigation. These factors are addressed in a three-part methodology: (1) consider the first three factors; (2) determine the indicated sanction; and (3) apply aggravating and mitigating factors. In re Schuler , 818 P.2d 138, 140 (Alaska 1991).
Sanction Methodology Part 1 Duty; Mental State; Actual or Potential Injury
A. Duty Violated
16. Vance's violations of ARPC 8.4(b) and (c) breached his duty of integrity owed to the public under ABA Standards § 5.1.
B. Mental State
17. Under the ABA Standards § III Definitions, "Intent" is the "conscious objective or purpose to accomplish a particular result." A violation of ARPC 8.4(c) requires evidence of an intentional mental state. In re Simpson , 645 P.2d 1223, 1227 (Alaska 1982) (applying predecessor rule). Vance admits that when he fabricated Client's mother's signature on the release and falsely notarized it he acted with a mental state of intent.
*56 C. Actual or Potential Injury
18. Vance's conduct did not cause financial injury to Client's estate or to Insurance Company.
19. Insurance Company's claims officer believed that public knowledge of Vance's conduct might leave the false impression that Insurance Company would tolerate the use of fraudulent documents, potentially harming the company's reputation or affecting other insureds.
20. The Alaska Lieutenant Governor issued a written reprimand to the notary public whose stamp Vance used because he failed to maintain the security of his notary seal.
21. Vance's conduct affected Law Firm's reputation and finances. Insurance Company's claims officer said that the company's local office at least temporarily began more careful review of documents from Law Firm to be sure that Vance's conduct didn't reflect a law firm practice. Law Firm's appropriate decision to waive the fee it had earned cost the firm over $5,000.
22. With or without a criminal conviction, a lawyer's fabrication of a legal document actually or potentially undermines public respect for the administration of justice and the legal profession's reputation for integrity.
Sanction Methodology Part 2 Indicated Sanction Under ABA Standards
23. The discipline for violating ARPC 8.4(b) and (c) is governed by Section 5.1 of the ABA Standards concerning breach of the duty a lawyer owes to the public to maintain personal integrity. Under § 5.11, disbarment is generally appropriate when:
(a) a lawyer engages in serious criminal conduct, a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft ...; or
(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.
Under § 5.12, suspension is generally appropriate for any other criminal conduct that seriously adversely reflects on the lawyer's fitness.
Sanction Methodology Part 3 Aggravating and Mitigating Factors
24. Aggravating factors. Vance was admitted to practice in 2001 and at the time of his misconduct had substantial experience in the practice of law, an aggravating factor under ABA Standards § 9.22(i). Though his conduct violated two ethics rules, aggravating factors for multiple offenses or pattern misconduct (ABA Standards § 9.22(c), (d) ) should not be applied because his misconduct amounted to one overarching event. The aggravating factor for illegal conduct (ABA Standards § 9.22(k) ) does not apply because criminal conduct is already the basis for the violation of ARPC 8.4(b) that Vance has admitted. There are no other aggravating factors.
25. Mitigating factors. Mitigating factors include:
(a) Vance has no prior disciplinary record, a mitigating factor under ABA Standards § 9.32(a).
(b) Vance made a timely good faith effort to rectify the consequences of his misconduct. (ABA Standards § 9.32(d) ). He timely filed a civil claim to preserve Client's interests. He offered to reimburse Law Firm for income it lost by waiving Client's contingent fee, but Law Firm declined the offer on grounds of their former friendly relationship. He attempted to apologize to Client's mother for fabricating her release; he left her a phone message and asked her to call him, but she did not return the call before he left Law Firm (and then he could not reach her because he lost access to the contact information in her client file).
(c) Vance promptly admitted his misconduct, made full and free disclosure during the Bar's investigation, and fully cooperated in the resolution of the charges against him. ABA Standards § 9.32(e).
(d) With the exception of this incident, Vance has demonstrated that he is a person *57 of good character, and till now he has had a good reputation for competence and integrity. ABA Standards § 9.32(g).
(e) Vance is entitled to mitigation for the imposition of other penalties or sanctions. ABA Standards § 9.32(k). These include:
(1) Vance lost his job with Law Firm.
(2) Vance was the subject of a criminal investigation and prosecution. He is on criminal probation under a suspended entry of judgment for committing a Class A misdemeanor, and is required to pay a fine of $1,000 and to perform 80 hours of community work service.
(3) As a consequence of the criminal proceedings, under Bar Rule 26 the Supreme Court is considering his immediate interim suspension from the Bar.
The parties agree that these other penalties and sanctions not only affect Vance but also serve as an effective deterrent to other members of the Bar.
(f) Vance has demonstrated to the Bar that he is sincerely remorseful for the harms to others and the imposition on the lawyer discipline system caused by his conduct. ABA Standards § 9.32(l).
26. Vance has additional mitigating factors not expressly listed in ABA Standards § 9.32. H is misconduct was an isolated act not likely to be repeated. He acted on impulse to preserve a claim for Client's estate that Insurance Company had agreed to settle and that Client's mother in fact had released. Vance was a salaried employee of Law Firm (not an equity partner or shareholder) and his use of the fabricated release to secure Client's settlement would not have provided him with any direct financial benefit.
27. Vance and the Bar Association agree that mitigating factors substantially outweigh aggravating factors.
ALASKA CASES
28. After considering the ABA Standards, sanctions are evaluated in light of other cases and authorities. In re West , 805 P.2d 351 (Alaska 1991) is the Alaska lawyer discipline case with facts most similar to those in Vance's case. West represented a plaintiff who died during settlement negotiations. West accepted the defendant's last settlement offer without disclosing his client's death, then instructed the client's widow to sign the release of claim in her husband's name. West notarized the false signature, tendered the release, and received the settlement check. After contested disciplinary proceedings-a disciplinary panel hearing, an appeal to the Disciplinary Board, and an appeal to the Supreme Court-and after analyzing the sanction under the ABA Standards, the Court suspended West for ninety days.
29. Vance and the Bar Association have also considered these reported Alaska decisions imposing discipline on lawyers who fabricated legal documents: In re Stump , 621 P.2d 263 (Alaska 1980) (lawyer, a party in a civil case, fabricated a document and swore to its authenticity in court proceedings; five year suspension following contested disciplinary proceedings); In re Walton , 676 P.2d 1078 (Alaska 1983) (lawyer altered a document and filed it with the trial court; eighteen month suspension following contested disciplinary proceedings); In re Hanlon , 110 P.3d 937 (Alaska 2005) (lawyer fabricated settlement documents and paid client from his own funds to conceal neglect, then tried to mislead Bar; three year suspension following contested disciplinary proceedings).
30. Vance and the Bar Association have considered these unreported orders imposing discipline for fabricating documents and related misconduct: In re Purdy , Supreme Court No. S-08996 (order of March 26, 1999) (to avoid penalties, lawyer forged documents of title to her car, falsely notarized them using another's notary seal, and testified falsely to a hearing officer about the transfer; five year suspension, by stipulation); In re Kellicut , Supreme Court No. S-14876 (order of Nov. 26, 2012) (lawyer fabricated addendum to his own prenuptial agreement, forged wife's signature, filed document with court, and submitted false discovery about it; disbarred after formal proceedings).
*58 31. Vance and the Bar Association acknowledge that a wide range of suspension lengths, and even disbarment, have been imposed on Alaska lawyers who fabricated legal documents. They concur that the more severe discipline in Stump , Hanlon , Purdy , and Kellicut was warranted because in those cases the fraud was compounded by other factors: each lawyer's fraud served a narrow self-interest; each attempted to cover up their fabrications with additional dishonesty; and (except for Purdy) each denied wrongdoing in hearings and appeals. Vance and the Bar agree that in his case lengthy suspension is not necessary to protect the public, and the nature of his misconduct coupled with his mitigating factors warrants a suspension on the low end of the possible range.
STIPULATED DISCIPLINE
32. Subject to approval by the Disciplinary Board and the Supreme Court, Vance and the Bar Association agree that under Alaska Bar Rule 16(a)(2) he should be suspended for six months.
33. Vance and the Bar Association agree that under Alaska Bar Rule 16(c)(3) the Supreme Court discipline order will specify that he must pay the Bar costs of proceedings in the amount of $1,000.
DATED this 26th day of October, 2017, at Anchorage, Alaska.
ALASKA BAR ASSOCIATION
/s/ MARK WOELBER
Mark Woelber
Assistant Bar Counsel
Bar Member No. 8011118
DATED this 26th day of October, 2017, at Anchorage, Alaska.
/s/ JEFFREY H. VANCE
Jeffrey H. Vance
Respondent Attorney
Bar Member No. 0111080
DATED this 26th day of October, 2017, at Anchorage, Alaska.
/s/ MICHAEL A. MOBERLY
Michael A. Moberly
Attorney for Respondent
Bar Member No. 9612073
CONSENT OF RESPONDENT
Respondent hereby consents, pursuant to Alaska Bar Rule 22(h), to the discipline stipulated above and states that this consent is freely and voluntarily given and is not the subject of any coercion or duress and that respondent admits to the allegations set forth above.
DATED this 26th day of October, 2017, at Anchorage, Alaska.
/s/ JEFFREY H. VANCE
Jeffrey H. Vance
Respondent Attorney
Bar Member No. 0111080
SUBSCRIBED AND SWORN to before me this 26th day of October, 2017.
(SEAL)
/s/
Notary Public in and for Alaska
My commission expires:_________

The stipulation has been edited to delete identifying references to others, for clarification, and to conform to supreme court technical requirements; attachments to the stipulation have been removed.

Cf. In re Miles , 339 P.3d 1009, 1018 (Alaska 2014) ("We independently review the entire record in attorney disciplinary proceedings, though findings of fact made by the Board are entitled to great weight." (quoting In re Shea , 273 P.3d 612, 619 (Alaska 2012) ) ).

Id.