**In the DISCIPLINARY Matter Involving Wevley William SHEA, Respondent.**

**No. S–14014.**

Supreme Court of Alaska.

April 6, 2012.

---

614

Louise R. Driscoll, Assistant Bar Counsel, Anchorage, for Alaska Bar Association.

Wevley William Shea, pro se, Anchorage, Respondent.

Before: CARPENETI, Chief Justice, FABE, WINFREE, and STOWERS, Justices.

*OPINION*

PER CURIAM.

## I. INTRODUCTION

The Alaska Bar Association Disciplinary Board adopted an area hearing committee's findings of misconduct by Wevley William Shea. The Board recommended suspending Shea from the practice of law for 25 months and requiring, before reinstatement, that Shea: (1) comply with Alaska Bar Rule 29(c)(1);[1] (2) "demonstrate, via evidence from a psychiatrist or psychologist, that [he] is mentally fit to return to the practice of law"; and (3) meet Bar Rule 2, Section 1(d)'s moral character and fitness requirements.[2]

---

1. Alaska Bar Rule 29(b) and (c)(1) provide that an attorney suspended for more than two years must petition for reinstatement and demonstrate by clear and convincing evidence that the petitioner "has the moral qualifications, competency, and knowledge of law required for admission" and that the petitioner's "resumption of the prac-tice ... will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive of the public interest."

2. Bar Rule 2, Section 1(d) provides that a candidate for admission to the Alaska Bar Association "[b]e one whose conduct justifies the trust of

Shea responded by continuing to deny misconduct on his part and asserting misconduct not only by the attorneys involved in the underlying civil proceedings, but also by the bar counsel prosecuting this disciplinary matter.

We heard oral argument on May 17, 2011. On May 18 we issued a brief order suspending Shea from the practice of law effective June 17 stating, in relevant part:

> The Area Hearing Committee, and, by adoption, the Disciplinary Board, found by clear and convincing evidence that Shea violated Alaska Rules of Professional Conduct 1.9(a) (conflict of interest), 3.1 and 3.3 (false statements of fact in court pleadings), and 4.4 (unprofessional pleadings). After reviewing the record and giving due weight to the relevant findings of fact, we agree those violations were proved by clear and convincing evidence.
>
> ... Applying our independent judgment to the appropriateness of [the Area Hearing Committee's, and, by adoption, the Board's, recommended] sanction, we adopt the recommended discipline.
>
> **IT IS ORDERED** that Wevley William Shea is suspended from the practice of law in Alaska for 25 months effective June 17, 2011, subject to the stated conditions for reinstatement.
>
> An opinion will follow.[3]

We now explain the basis for our earlier suspension order.

## II. FACTS AND PROCEEDINGS

### A. Background Facts[4]

#### 1. Shea and David

Shea was licensed to practice law in Alaska in 1977. In 1994 Shea began representing David, an Anchorage physician, on matters relating to complaints about David's workplace conduct. While representing David, Shea reviewed David's memorandum detailing his alleged workplace relationship issues.

Shea also became friends with David's sister, Deborah. In 1996 Shea withdrew from David's representation "[d]ue to the conflict that has arisen." Shea returned David's records and said he could no longer represent David while maintaining his relationship with Deborah.

In 1999 David voluntarily surrendered his medical license "for personal reasons," with no admissions of misconduct.

#### 2. David and Deborah

David and Deborah have interests in family businesses, including a real estate partnership consisting of David, Deborah, and their two sisters, and a corporation holding a significant real estate investment.

In 2005 David initiated litigation regarding the partnership, seeking access to the partnership's financial records, an accounting, and a valuation of partnership interests. Deborah counterclaimed against David for intentional infliction of emotional distress, and David then sought dissolution of the partnership. Attorney B represented David in the 2005 partnership litigation.

After David and Deborah's mother died in 2005, Attorney O represented David in suing his mother's estate and challenging the validity of his mother's trust. The disputed trust owned a family home on part of a plot originally purchased as tenants-in-common by David's father and a family friend. At some point, a member of the friend's family filed a partition suit for the plot; Deborah counterclaimed against members of that family and David, alleging in part that David's conduct and mental illness jeopardized her interest in the property. Attorney T represented David in the partition litigation and began assisting Attorney O in the trust litigation.

In 2007 Deborah brought a derivative action regarding the corporation, alleging

clients, adversaries, courts and others with respect to the professional duties owed to them. Conduct manifesting a significant deficiency in the honesty, trustworthiness, diligence or reliability of an applicant is a basis for denial of admission."

3. *In re Shea,* 251 P.3d 357, 358 (Alaska 2011) (footnotes omitted).

4. We have omitted the full names of Shea's former clients and other attorneys involved in the matter to protect their privacy.

David and others were defrauding shareholders. Attorney T also represented David in this litigation.

In July 2008 David, Deborah, and their two siblings reached a global settlement. They agreed to divide assets in their mother's estate and trust, wind up the partnership, and dismiss all pending cases except for Deborah's case against the corporation, although Deborah agreed to release her claims against David in that litigation. Her case against the corporation settled in early 2009.

### 3. Shea and Deborah

In 1996 Shea began helping Deborah in a medical insurance matter not involving her family. Deborah did not recall whether she signed an engagement letter with Shea, nor was she certain if or when Shea actually represented her as an attorney in that matter. Deborah recalled that about this time both Shea and David, separately "in passing," mentioned that Shea represented David "on a small matter."

Sometime in 1997 Deborah told Shea of David's "escalating abuse" and the damage it was causing Deborah, her mother, and her sisters. After these discussions with Shea, Deborah retained another attorney to represent her. From this point until July 2005, Shea and Deborah continued to discuss her problems with David.

In July 2005, shortly after David initiated the partnership litigation, Shea and Deborah signed an engagement letter for Shea to represent Deborah. The engagement letter reflected that Shea intended to "assist [Deborah and her attorney] in meeting, countering and destroying [David's] vicious actions and allegations" and that David's "vicious history of assaultive behavior on [Deborah] emotionally and physically has been and is being documented by [Shea]." Shea subsequently requested records from the State about David's medical license surrender, but was denied access.[5]

Beginning in February 2007 Shea sent several ethics complaints about David's attorneys to the Bar Association. In June 2007 Shea received verbal permission from Bar Counsel to disclose those complaints to Deborah's other attorneys. Shea then filed, in the trust litigation, redacted versions of the complaints as exhibits to a 72–page motion for Attorney O's disqualification as David's attorney and for sanctions, damages, and attorneys' fees.[6]

Superior Court Judge Mark Rindner, presiding over the trust litigation, struck the motion, stating it was not helpful and was the worst pleading he had seen in seven years on the bench, but he allowed Shea to file a new motion. Shea filed a new motion for Attorney O's disqualification and it was denied.

In December 2007 Attorney T requested Shea's immediate withdrawal in the trust suit due to a conflict of interest. In May 2008 Shea sent letters to the Anchorage Police Department, Alaska Department of Public Safety, Federal Bureau of Investigation, and Alaska State Medical Board alleging that David was engaged in criminal conduct. Shea also filed, in the trust litigation, a "[m]emorandum defining corrupt judicial stalking and opposition to motion to disqualify Wev Shea" in which he accused David of focusing "his abusive, bullying 'hate'" on Deborah; nearly four pages were devoted to describing Shea's own "education and professional history" in support of his claims. In June 2008 Shea argued that "[David] and his counsel are involved in a conspiracy in furtherance of criminal conduct and fraud" and that they had engaged in "criminal acts." The superior court ordered Shea to withdraw from the case in June 2008.

### B. Bar Proceedings

In May 2009, after receiving grievances against Shea, the Bar petitioned for a formal

---

5. Records of a review organization such as the Alaska State Medical Board are confidential. AS 18.23.030(a) ("[A]ll data and information acquired by a review organization in the exercise of its duties and functions shall be held in confidence[.]"); AS 18.23.070(5)(B) (defining State Medical Board as a "review organization").

6. Shea accused David of having "severe 'health related problems'" and called him "an ill 'evil sick man' who is filled with 'hate.'" Shea also maintained Attorney O "violated his most basic obligations as a lawyer to his client" and was "intentionally unethical, libelous and defamatory."

hearing before the Area Hearing Committee. The petition detailed Shea's involvement with David and Deborah and highlighted Shea's court filings, including the 72–page memorandum for sanctions against Attorney O, a 21–page memorandum accusing David of judicial stalking, a 69–page letter to the family corporation's attorney with over 90 exhibits containing criminal accusations against David, and a 28–page response to David's motion for sanctions in the trust suit, alleging criminal conspiracy.

The Bar alleged four counts against Shea: (1) conflict of interest by representing Deborah in proceedings in which her interests were adverse to David's;[7] (2) disclosure of confidential information by using information gained while representing David against him, while representing Deborah;[8] (3) false statements of fact in court pleadings by alleging David and his attorneys were engaged in "numerous white collar federal and state crimes" as well as a criminal conspiracy;[9] and (4) filing abusive pleadings and using his own credibility and connections to law enforcement while representing Deborah.[10] Shea denied the charges, accused David of "judicial stalking" by improperly instituting litigation against Deborah, and alleged David "is seriously ill and either cannot or will not be truthful and cannot define 'right from wrong.'"

Shea then filed a motion asking the Committee to "order a mental examination of [David] ... pursuant to [Alaska] Civil Rule 35."[11] Shea accused David of having a mental illness, using psychotropic medication, bullying, stalking, and engaging in "sadistic conduct." Shea contended David's "counsel all know [David] is ill and a threat to Deborah ... and others who oppose his conduct," concluded David's mental health was in controversy, and argued good cause existed to require a mental examination. The Commit-

tee denied Shea's motion. The Committee stated that because the Bar and Shea were the only parties before it, Civil Rule 35 did not allow a court-ordered mental examination of David.

In February 2010 the Committee held a five-day formal hearing to determine whether Shea violated ethical duties. At the hearing Shea argued that Attorneys B, T, and O made "intentional ongoing misrepresentation[s] to multiple judges ... that this gentleman, [David], knows what he's saying, and can testify to the truth." Shea claimed the attorneys knowingly allowed David to sign false affidavits regarding whether David had helped care for his mother. Shea argued that bringing lawsuits on David's behalf "to destroy [Deborah] mentally, physically and financially, constitutes a criminal conspiracy." Shea indicated he used the word "satanic" in his filings to mean David had engaged in "evil conduct," and that the substantial litigation-related purpose of his statement was "to define the truth."

The Committee found Shea "obtained substantial confidential information about [David]" during his representation of David. The Committee also found that during the series of lawsuits involving David and Deborah, "[Deborah's] interests were, for the most part, directly adverse to [David's] interests" and that Shea never sought or received David's "informed consent to the representation." After quoting "forceful[ ]" language from Shea's filings, the Committee found each statement "was intended to state or imply that [David] had, in the past, abused medical colleagues, staff and others." With respect to Shea's criminal conduct allegations, the Committee found Shea's "statements that one or more attorneys representing [David] were involved 'in a conspiracy in furtherance of criminal conduct and fraud' or

7. *See* Alaska R. Prof. Conduct 1.9(a) (Duties to Former Clients).

8. *See id.* at 1.6 (Confidentiality of Information), 1.8 (Conflict of Interest: Current Clients: Specific Rules), 1.9 (Duties to Former Clients).

9. *See id.* at 3.1 (Meritorious Claims and Contentions), 3.3 (Candor Toward the Tribunal).

10. *See id.* at 4.4(a) (Respect for Rights of Third Persons).

11. Civil Rule 35 provides, in relevant part, "[w]hen the mental ... condition ... of a party, or of a person in the custody or under the legal control of a party, is in controversy, the court in which the action is pending may order the party to submit to a ... mental examination."

in 'criminal acts' are false, and that there was no reasonable basis in law or fact for such assertions." Lastly, the Committee found that while representing Deborah, Shea "made various statements and took various actions, the primary purpose and effect of which was to embarrass, demean, offend, intimidate and harm the reputations of [David] and his counsel."

The Committee's conclusions of law addressed all four counts. First, it concluded that Shea violated Professional Conduct Rule 1.9(a) when he represented Deborah and David in "substantially related" matters, possessed confidential information about David, and failed to obtain David's informed consent before representing Deborah. Second, the Committee ruled in Shea's favor on the disclosure of confidential information count because it could not "conclude, based on clear and convincing evidence, that [Shea's] general references to [David]'s alleged abuse were based on information gained during his representation of [David]," rather than on independently gained information. Third, the Committee concluded Shea knowingly made false material statements in violation of Professional Conduct Rules 3.1 and 3.3 when he alleged a criminal conspiracy. Fourth, the Committee found Shea filed unprofessional documents in violation of Professional Conduct Rule 4.4 because, "when viewed in its entirety, [Shea's] conduct ... was replete with demeaning, offensive, insulting, intemperate, frivolous and outrageous conduct and statements." [12]

In May the Committee held a hearing to determine appropriate sanctions. The Bar sought a three- to five-year suspension or disbarment, and Shea countered that his license should not be suspended. The Bar called Attorney T and David to testify about the harm they suffered, and submit-

ted an affidavit from Attorney O. Shea called no witnesses. The Bar suggested there were several aggravating factors—dishonest or selfish motive, pattern misconduct, multiple offenses, submission of false statements during the disciplinary process, refusal to acknowledge the wrongful nature of his conduct, and substantial experience in the practice of law—while the only mitigating factor was Shea's lack of disciplinary history. Shea's closing argument generally reiterated his position that because David is "satanic," Shea's actions were necessary to prevent ongoing fraud.

While the Committee's sanctions decision was pending, Shea filed a document titled "Offer of Settlement and Resolution by Wev Shea with Notice to Hearing Panel of Ongoing Fraud, Perjury and Subornation of Perjury by [David], His Attorneys and the [Alaska Bar Association]." Shea demanded that: the Assistant Bar Counsel handling Shea's case resign; the private attorney acting as Special Bar Counsel handling Shea's case notify his insurance carriers of "prosecutorial incompetence"; the Bar's counsel attend an annual seminar on various types of abuse; the Bar apologize to Shea in writing; and Assistant Bar Counsel and Special Bar Counsel cooperate with law enforcement in criminal investigations of David and Attorneys O, B, and T, and dismiss the disciplinary matter against Shea. About one week later, Shea filed a document titled "Motion/Memo to Dismiss [Alaska Bar Association] Petition with Prejudice Due to [Alaska Bar Association's] 'Prosecutorial Misconduct' Including Intentional Subordination of Perjury by Assistant Disciplinary Counsel [ ] and Special Counsel [ ] Requiring ARPC 3.3/Civil Rule 11 Sanctions." The Committee denied Shea's motion to dismiss.

12. The committee referenced its findings of fact that Shea had made statements and took actions, "the primary purpose and effect of which was to embarrass, demean, offend, intimidate and harm the reputations of [David] and his counsel," including: (1) describing legitimate legal proceedings as "judicial stalking"; (2) describing David and his conduct as " 'satanic,' 'evil,' 'terroristic,' 'POW business torture,' 'corrupt,' 'perverted,' 'predatory,' 'depraved,' and 'deranged' "; (3) referring to David's counsel "as 'a disgrace to the legal profession,' 'unethical and corrupt,' 'dangerous to the public,' ... and accusing them of engaging in 'Alaska good old boy legal corruption,' 'perpetuating a fraud on Alaska's judicial system,' 'intentionally abusing their practice of law,' ... and filing 'hateful evil litigation' "; and (4) sending copies of various court filings to the Federal Bureau of Investigation, Anchorage Police Department, Alaska Department of Public Safety, Alaska State Medical Board, and the Alaska Bar Association.

In reaching its sanctions decision, the Committee applied the American Bar Association's standards for sanctions, considering: (1) ethical duties the lawyer violated; (2) the lawyer's mental state; (3) the extent of injuries caused by the misconduct; and (4) aggravating and mitigating factors. The Committee incorporated its previous findings and conclusions, adding that Shea "acted with a knowing mental state ... repeatedly and over a number of years." The Committee also agreed with the Bar's analysis regarding the aggravating and mitigating factors. The Committee determined a 25–month suspension was appropriate, noting that Alaska Bar Rule 29(c)(1) added additional burdens prior to reinstatement. The Committee also added a proviso that prior to applying for reinstatement, Shea "be required to demonstrate, via evidence from a psychiatrist or psychologist, that [he] is mentally fit to return to the practice of law" and meet the moral character and fitness requirements imposed by Bar Rule 2, Section 1(d). Shea subsequently filed several motions for reconsideration, all of which the Committee denied.

Shea appealed to the Disciplinary Board and filed a document titled "Notice of [David]'s June 29, 2010 Assault on [Deborah] with 2nd Settlement Offer for Resolution by [Shea]" alleging that David had assaulted Deborah, and that Attorney B "again perjured himself in his attempt to protect sadistic bullying," repeating many of the allegations and demands from his first settlement offer, and adding a demand for the Bar to pay Shea $3 million and Deborah $6 million "due to the conduct" of the Bar's witnesses throughout the proceedings. After a hearing the Board issued a two-page order adopting the Committee's findings, conclusions, and sanctions recommendation, and suggested immediate interim suspension.

Shea raised 26 points on appeal to this court. His arguments follow two themes: (1) the Committee erred in its determination that Shea's statements regarding David's involvement in a criminal conspiracy and his general attitude were false; and (2) Shea's conduct was necessary to stop corruption and wrongdoing. Before oral argument Shea filed a document titled "Motion and Memorandum to Preserve the [Alaska Bar Association]'s Institutional Integrity and Honor and the Need for 5th Amendment Protection of the [Alaska Bar Association] 'Prosecution' Attorneys." He argued that "[t]he [Alaska Bar Association]'s historic inept investigation, its intentional coverup and intentional prosecutorial misconduct with ongoing 'serious crimes' is uncontroverted/undeniable." Shea accused the Bar's counsel of suborning perjury and engaging in "prosecutorial malfeasance." After the Bar responded, we held the motion in abeyance for consideration with the merits of Shea's disciplinary matter.

We issued an order agreeing that the Board had proved disciplinary violations by clear and convincing evidence and adopting the recommended discipline, indicating an opinion would follow.[13]

## III. STANDARD OF REVIEW

We review decisions of the Disciplinary Board pursuant to Alaska Bar Rule 22(r).[14] "We independently review the entire record in attorney disciplinary proceedings, though findings of fact made by the Board are entitled to great weight."[15] "We apply our independent judgment to questions of law and questions concerning the appropriateness of sanctions."[16] Our individual examination of each case is "guided but not constrained by the American Bar Association's Standards for Imposing Lawyer Sanctions and by the sanctions imposed in comparable disciplinary proceedings."[17]

## IV. DISCUSSION

### A. Professional Conduct Rule 1.9(a)— Conflict Of Interest

Professional Conduct Rule 1.9(a) provides:

---

13. *In re Shea*, 251 P.3d 357 (Alaska 2011).

14. *In re Brion*, 212 P.3d 748, 751 (Alaska 2009).

15. *In re Cyrus*, 241 P.3d 890, 892 (Alaska 2010) (citing *In re West*, 805 P.2d 351, 353 n. 3 (Alaska 1991)).

16. *Id.* (quoting *In re Hanlon*, 110 P.3d 937, 941 (Alaska 2005)).

17. *Id.* at 892–93 (quoting *In re Friedman*, 23 P.3d 620, 625 (Alaska 2001)).

A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

We have defined "substantially related matter[s]" as matters "(1) that involve the same transaction or the same underlying legal dispute, or (2) where there is a substantial risk that confidential factual information obtained in the prior matter would materially advance a client's position in the subsequent matter."[18] Matters are not "substantially related" under paragraph (2) "if the confidential information imparted to the lawyer has since been disclosed to the public or to other adverse parties."[19]

■ The Committee found Shea's representation of Deborah substantially related to his representation of David because they shared a "common element" that David "had a past 'pattern and practice' of abuse." The Committee stated that "regardless of whether [Shea] actually used or disclosed any confidences or secrets he had gained during his representation of [David], he clearly *possessed* confidential information which would materially advance [Deborah]'s interests in the subsequent litigation." The Committee also found that Shea's representation of Deborah was "materially adverse" to David's interests because Shea had sought to "defend[ ] [David] *against* charges of abusive conduct" but had switched to showing on Deborah's behalf that David's "actions toward her were part of a 'pattern and practice' of abusive conduct dating back to his days as a practicing physician." Because Shea had not obtained informed consent, the Committee determined Shea violated Professional Conduct Rule 1.9(a).

Shea argues that his representation of Deborah was not substantially related to his prior representation of David because "[t]he Hearing Panel held [David's] conduct/illness

was known to the public." Shea points to the Committee's finding that Deborah "cited several examples of instances in which she had learned, either from personal observation or from independent statements made to her by doctors, hospital personnel and others, that [David] had been verbally abusive to doctors, nurses and hospital personnel." According to Shea, this "credible" testimony demonstrates that the public disclosure exception applies to his case.

Shea's argument fails for three reasons. First, it is waived because Shea raised it for the first time in his reply brief.[20] Second, even if he had not waived it, the public disclosure exception does not apply to matters "that involve the same transaction or the same underlying legal dispute."[21] In representing Deborah, Shea placed at issue David's behavior toward other individuals. Although the alleged victims of the improper behavior were different, the issue of whether David acted improperly is the same. Third, Deborah's knowledge of allegations against David does not sufficiently show that the allegations "have since been disclosed to the public." To the contrary, any circumstances surrounding David's medical license relinquishment are confidential. We therefore agree with the Committee's finding that Shea violated Professional Conduct Rule 1.9(a).

**B. Professional Conduct Rules 3.1 And 3.3(a)(1)—False Statements Of Fact In Court Pleadings**

■ Professional Conduct Rule 3.1 provides, in relevant part, that "[a] lawyer shall not bring or defend a proceeding, or assert or controvert an issue therein, unless there is a non-frivolous basis in law and fact for doing so." Professional Conduct Rule 3.3(a)(1) provides that "a lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

**18.** Alaska R. Prof. Conduct 9.1(q).

**19.** *Id.*

**20.** Alaska R.App. P. 212(c)(3) (stating reply brief "may raise no contentions not previously raised in either of the appellant's or appellee's briefs").

**21.** Alaska R. Prof. Conduct 9.1(q)(1).

The Board adopted the Committee's finding that Shea violated both provisions by stating in his response to David's motion for sanctions that David's counsel "were 'involved in a conspiracy in furtherance of criminal conduct and fraud,' and that they had engaged in 'criminal acts.'" The Board further adopted the Committee's finding that these statements were false, Shea had no non-frivolous basis in law or fact for making them, and Shea made them knowingly.

■ Shea's arguments focus primarily on conflicting testimony in the record. Shea notes that David submitted an affidavit stating that his mother never kept medical information from him and that Deborah was reluctant to distribute funds to his mother for health and support, but Deborah denied both of these statements under oath. Our independent review of the record reveals no reason to credit Deborah's testimony more than David's testimony or his attorneys' assertions that they had no reason to question David's truthfulness, and "[w]e ordinarily will not disturb findings of fact made upon conflicting evidence." [22]

Shea's misconduct stems not from his assertion that David was not being truthful, but from his statements that David's attorneys were engaged in criminal conduct. Regardless of the veracity of David's statements, Shea had no factual basis for his assertions regarding David's attorneys. Giving "great weight" to the factual findings that Shea's statements accusing David's attorneys of conspiracy or engaging in criminal acts were false, [23] we conclude Shea violated Professional Conduct Rules 3.1 and 3.3(a)(1).

### C. Professional Conduct Rule 4.4—Unprofessional Pleadings

■ Professional Conduct Rule 4.4(a) provides, in pertinent part, "[i]n representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person." The

Board adopted the Committee's finding that several of Shea's statements violated Professional Conduct Rule 4.4(a),[24] including the Committee's statement that Shea's acts, "viewed solely in isolation, might be deemed insufficient to trigger a violation of this Rule," but that Shea's "conduct, which was replete with demeaning, offensive, insulting, intemperate, frivolous and outrageous conduct and statements, is sufficient to support a violation" of Professional Conduct Rule 4.4(a).

Shea argues David acted so unjustly that it required and justified Shea's response. Shea contends that his "statements are true and professional," and that his statements' "substantial purpose is to define the truth." But giving great weight to the finding that Shea's purpose "was to embarrass, demean, offend, intimidate and harm the reputations of [David] and his counsel," we agree that Shea violated Professional Conduct Rule 4.4.

### D. Prosecutorial Misconduct

■ Shea argues the Bar's counsel committed prosecutorial misconduct and "serious crimes" during the hearings. Shea alleges the Bar "hid evidence, [and] suborned and endorsed clear [Alaska Bar Association] perjury" in violation of his due process rights. Shea contends counsel knew the Bar's witnesses—David and his attorneys—would falsely testify about David's mental illness and the underlying conspiracy. Shea alleges counsel was "on notice" of the ongoing conspiracy because Shea had outlined it in his previous filings. Shea claims "[t]he [Alaska Bar Association] intentionally concealed 'facts and circumstances as they existed' and . . . intentionally ignored, concealed or manipulated 'public' evidence and facts" by opposing the admission of, and ignoring, various letters and pleadings Shea submitted.

But other than pointing to Deborah's testimony, Shea provides no evidence to suggest the Bar's opposition to Shea's proffered evi-

---

**22.** *In re Friedman,* 23 P.3d at 625 (citing *In re Triem,* 929 P.2d 634, 640 (Alaska 1996)).

**23.** *See In re Rice,* 260 P.3d 1020, 1027 (Alaska 2011) (quoting *In re West,* 805 P.2d at 353 n. 3).

**24.** The Committee found Shea made statements and took actions, "the primary purpose and effect of which was to embarrass, demean, offend, intimidate and harm the reputations of [David] and his counsel."

dence or the Bar's decision to call David and his attorneys to testify constituted anything other than good faith advocacy. David's ability to distinguish between truth and falsehood was supported by sworn testimony from one of David's attorneys.

The Bar maintains its objections to the admission of evidence were appropriately sustained or overruled by the Committee, and Shea "has failed to point to any specific ruling as an abuse of discretion." We agree with the Bar—the Committee, not the Bar, determined evidence admissibility and the weight it was given.

The Bar also points out that Shea was given ample opportunity to make his case, as the Committee expressly instructed Shea to take the time he needed to present his case. The Bar's positions were adversarial by nature, but not unfair.[25] Thus Shea was not deprived of due process.[26]

### E. Sanctions

■ We apply a three-step analysis to determine attorney sanctions:

> We first address: (1) the duty violated; (2) the lawyer's mental state; and (3) the extent of the actual or potential injury. We next examine recommended sanctions under the [American Bar Association] Standards for misconduct found in the first step. We then determine how aggravating or mitigating factors affect the recommended sanctions.[27]

#### 1. Step one—ethical duties, mental state, injury, or potential injury

■ As discussed above, Shea violated duties to his clients, the court, and the legal

system by: (1) representing a client in conflict with his prior representation of a prior client; (2) making false statements of fact in court filings; and (3) filing unprofessional documents. The Board adopted the Committee's finding that Shea "acted with a knowing mental state, that he did so repeatedly and over a number of years." Because Shea has not challenged the sanctions, he has not met his burden of demonstrating that the factual findings regarding his mental state were incorrect.[28] For the same reason, we adhere to the finding that Shea "caused potential injury to [David's lawyers], plus actual injury to at least" David. We add that Shea's lengthy and duplicative filings have caused the Bar and the court system significant cost.

#### 2. Step two—ABA-recommended sanctions

The applicable ABA standard provides that "[s]uspension is generally appropriate when a lawyer knows of a conflict of interest and does not fully disclose to a client the possible effect of that conflict, and causes injury or potential injury to a client."[29] Suspension is also "generally appropriate when a lawyer knows that false statements or documents are being submitted to the court … and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding."[30] And suspension is "generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional and causes injury or potential injury to a client, the public, or the

25. *Cf. In re Brion,* 212 P.3d at 753–56 (denying attorney's various due process appeals to suspension).

26. Shea also contends the Bar "concealed the truth" and violated his Sixth Amendment confrontation rights by concealing David's mental illness, which would have been "impeachment evidence that bears on the credibility" of the Bar's "star witness." Shea's confrontation clause argument is waived because he did not raise the issue until his reply brief. Appellate Rule 212(c)(3); *see also In re Rice,* 260 P.3d at 1029 (finding due process argument waived because it was first raised when the Bar had no opportunity to respond).

27. *In re Cyrus,* 241 P.3d at 893 (citing *In re Hanlon,* 110 P.3d at 941–942).

28. *In re Rice,* 260 P.3d at 1032 n. 20 ("[W]here findings of fact entered by the Board are challenged on appeal to this court, … the respondent attorney bears the burden of proof in demonstrating that such findings are erroneous." (quoting *In re West,* 805 P.2d at 353 n. 3)).

29. Standards for Imposing Lawyer Sanctions § 4.32 (ABA 1992).

30. *Id.* at § 6.12.

legal system." [31] The recommended suspension is between six months and three years.[32]

### 3. Step three—aggravating and mitigating factors

We agree with the Committee's finding, adopted by the Board, that six aggravating factors under ABA standard 9.2 apply: (1) dishonest or selfish motive; (2) a pattern of misconduct; (3) multiple offenses; (4) submission of false statements during the disciplinary process; (5) refusal to acknowledge wrongful nature of conduct; and (6) substantial experience in the practice of law. We agree that Shea's lack of a prior disciplinary record presents a mitigating factor under ABA standard 9.3.

### 4. Recommended sanctions

 The Board adopted the Committee's recommended 25–month suspension. It also adopted the Committee's recommendation that before reinstatement Shea: (1) comply with Alaska Bar Rule 29(c)(1);[33] (2) "demonstrate, via evidence from a psychiatrist or psychologist, that [he] is mentally fit to return to the practice of law"; and (3) meet the moral character and fitness requirements imposed by Bar Rule 2, Section 1(d).[34] Although Shea does not expressly contest the sanctions, we independently determine the appropriate level of discipline.[35]

**31.** *Id.* at § 7.2.

**32.** *Id.* at § 2.3.

**33.** Bar Rule 29(c)(1) applies to a lawyer suspended for more than two years and requires a hearing in which the reinstatement applicant must demonstrate "by clear and convincing evidence that (s)he has the moral qualifications, competency, and knowledge of law required for admission to the practice of law."

**34.** Bar Rule 2, Section 1(d) requires attorneys' conduct to justify "the trust of clients, adversar-

 We are "guided but not constrained" by the Board's sanctions decision.[36] We find the sanctions appropriate in this case, and therefore independently adopt them.

### F. Shea's Pending Motion

In February 2011 Shea filed a document with this court titled "Motion And Memorandum To Preserve The [Alaska Bar Association]'s Institutional Integrity And Honor And The Need For 5th Amendment Protection Of The [Alaska Bar Association] 'Prosecution' Attorneys."

In the motion Shea argued the Bar had committed several crimes and needed constitutional protection from itself. We held the motion in abeyance pending our decision in this case. Bar Counsel's conduct was professional and appropriate. Shea's motion is without merit and is therefore denied.

## V. CONCLUSION

We IMPOSE the sanctions recommended by the Alaska Bar Association Disciplinary Board, as noted above.

CHRISTEN, Justice, not participating.

ies, courts and others with respect to the professional duties owed to them." Section 1(d) also allows for denial of entry into the bar for "deficiency in honesty, trustworthiness, diligence or reliability" and enumerates ten examples of conduct requiring further inquiry before allowing entry into the bar.

**35.** *In re Brion,* 212 P.3d at 751; *In re Ford,* 128 P.3d 178, 182 (Alaska 2006); *see also* Alaska Bar R. 22(r).

**36.** *See In re Cyrus,* 241 P.3d at 892–93 (quoting *In re Friedman,* 23 P.3d at 625).