Bar Counsel for the Alaska Bar Association and attorney Lawrence F. Reger entered into a stipulation for discipline by consent that would result in a six-month suspension from the practice of law, nine hours of specific continuing legal education as a condition prior to seeking reinstatement to the practice of law, and payment of $1,000 in costs. The Bar Association's Disciplinary Board approved the stipulation and now recommends that we do so as well. The facts of Reger's misconduct are set forth in the stipulation, which is attached as an appendix.[1] We take these facts as true,[2] and we apply our independent judgment to the sanctions' appropriateness.[3]
Based on the stipulated facts we agree with the legal analysis-set out in the stipulation-that the agreed upon sanctions are appropriate for Reger's misconduct. Accordingly,
Lawrence F. Reger is suspended from the practice of law for six months, required to *27 complete six hours of CLE regarding law office management and three hours of legal ethics as a condition prior to seeking reinstatement to the practice of law, and shall pay $1,000 to the Alaska Bar Association within 60 days from entry of this order for disciplinary costs and fees incurred in this case.
This order is effective 30 days after issuance pursuant to Alaska Bar Rule 28(c).
Entered by direction of the court.
Appendix
BEFORE THE ALASKA BAR ASSOCIATION
DISCIPLINARY BOARD
In The Disciplinary Matter Involving
LAWRENCE F. REGER,
Respondent.
ABA Membership No. 9811081
ABA File No. 2014D183, 2014D223
Pursuant to Alaska Bar Rule 22(h), Lawrence F. Reger, Respondent, by and through counsel, Jason A. Weiner, and Louise Driscoll, Assistant Bar Counsel, stipulate as follows:
JURISDICTION AND VENUE
1. Reger was at all times pertinent, an attorney at law admitted to practice by the Supreme Court of Alaska, and a member of the Alaska Bar Association. At all times relevant, Reger practiced law in Fairbanks, Fourth Judicial District, Alaska. On April 22, 2016, the Alaska Supreme Court suspended Reger for non-payment of 2016 Bar dues. Reger remains on administrative suspension.
2. Reger is, and was at all times pertinent, subject to the Alaska Rules of Professional Conduct ("ARPCs") and to Part II, Rules of Disciplinary Enforcement, Alaska Bar Rules, giving the Alaska Supreme Court and the Disciplinary Board of the Bar jurisdiction to resolve this matter.
BACKGROUND FACTS
3. In late 2014 Bar Counsel opened two disciplinary grievances against Reger for investigation. The following facts will describe Reger's law practice and his law practice management which led to the professional misconduct depicted in the two grievances.
4. Reger was admitted to the practice of law in Alaska in November 1998. In 2006 or 2007, while sharing offices in Fairbanks with several other attorneys, he decided to hire a legal assistant. After interviewing several persons, he hired KW because she communicated well and had excellent organizational skills.
5. Initially KW was assigned simple tasks, including making copies and answering telephone calls. She arrived early and stayed late at the office. She was friendly with co-workers, but task-oriented. Over time KW revealed an eye for detail and a willingness to seek clarification if she was uncertain about a task. Reger was most impressed that KW would report when she made a mistake which allowed corrective measures to be promptly taken.
6. In response to her proven abilities, Reger assigned her more complex tasks, such as drafting simple letters, calendaring deadlines, drafting Civil Rule 90.3 child support guidelines, drafting Civil Rule 26.1 disclosures in domestic relations cases, and preparing trial exhibits.
7. KW became a key part of Reger's successful practice which he likened to a well-oiled machine. KW made copies, prepared routine non-substantive motions such as requests for extension of time, and was the primary point of contact for clients on all non-substantive matters. Reger dealt with substantive matters, drafted motions, and reviewed and formulated discovery. Reger held KW in high regard because she was conscientious and hard-working and she demonstrated a caring nature toward the firm's clients.
8. After several years, other lawyers in the office suite relocated. The space was too expensive for Reger to maintain so he entered a different office-sharing arrangement with different attorneys.
9. Around this time KW left the state with her military spouse who had been transferred to a new duty station. The attorneys *28 in the new office suite had difficulty in finding and maintaining competent staff. One day KW called to say her husband was retiring from the military and the family was returning to Alaska. Reger offered her a job on the spot and she accepted.
10. KW returned to work in late 2011. She adjusted quickly to working with three different attorneys with quite different practices. After one of the attorneys relocated, KW continued to work with Reger and the other lawyer in the office suite.
11. During the summer of 2013, the other attorney's behavior began to change. He became short-tempered and often didn't show up at the office. KW reported the attorney's clients were becoming increasingly upset. Reger and KW began to discuss moving to another location due to the stressful situation.
12. In the late summer of 2013, Reger tried to make a phone call and discovered his office line was disconnected. He learned the telephone bills had gone unpaid.
13. Under the office-sharing arrangement, Reger paid one-half of the total office overhead, including the telephone bill, to the other attorney who appeared not to be applying those funds to the service providers. From his perspective Reger was current with his bills, but he paid $3,200 to the phone company that day to have his phone service restored.
14. Learning about the overdue telephone bill prompted a call to the landlord and Reger learned that office rent had not been paid in several months. Reger was subletting from the other attorney, and was not a party to the primary rental agreement, but he brought his portion of the rent current to avoid immediate eviction.
15. Reger realized that bringing the bills current did not solve the problem. He and KW decided to move to a new office despite the time and expense associated with a move.
16. Most available office space in downtown Fairbanks was for more space than he needed and more money than he could afford. A former client learned that Reger was looking for office space and called with a proposal. The client's wife owned a duplex with a mother-in-law apartment that had been used for an office before. It was small but conveniently located so it met Reger's needs.
17. Reger had a significant cash-flow problem because he had to bring a number of bills current on little notice. To help fund the office move, KW offered to loan Reger $16,000 from a personal injury settlement he had recently obtained on her behalf.
18. Reger and KW discussed the proposal at length. Reger accepted KW's offer and promised to share future profits 50/50 with her, first as a loan repayment and then as a bonus.
19. Reger and KW moved into their new office location in early October 2013. Problems immediately began. The former client who had offered the rental space was arrested and charged with several significant federal firearms-related felonies. The client's wife, the landlady, was also under investigation by federal authorities, including the Bureau of Alcohol, Tobacco and Firearms (BATF), and was under a great deal of stress.
20. The telephone company refused to transfer his office phone, fax lines and e-mail accounts because they were in the name of the other attorney who had fallen in arrears again. Thus, Reger had to switch his phone, fax and internet provider to another service provider. KW said she provided clients with new contact information, but it was difficult for former clients who wanted representation in new matters and potential new clients to locate his office. Mail delivery was erratic, but gradually improved.
21. In the spring of 2014, KW started acting strangely. She appeared anxious and depressed and she alluded to family problems. Then KW confided she had been diagnosed with cancer. She produced a printout of a medical test showing masses in her liver and a declaration that the masses were malignant. KW asked for flexibility to be able to attend medical appointments and to personal *29 matters as they arose. Reger assured KW he would happily accommodate her.
22. Reger was devastated by the news that KW had cancer. KW's husband was a close personal friend. He had watched their child grow from pre-school to high school. KW's medical condition made him question the future of his practice because he could not envision working with someone other than KW who got along so well with his clients and who was so skilled and helpful in his practice.
23. Over the next few months KW's condition became increasingly uncertain. New tests proved the cancer diagnosis wrong, but severe symptoms with KW's digestive system continued. KW seemed tired, anxious and depressed, but she told Reger that her work kept her sane and she refused to consider a leave of absence or retirement. Work started to pick up, but KW denied that she was overwhelmed at the office. She seemed agitated when Reger asked if she needed help so he backed off.
24. In mid-2014 BATF stopped by Reger's office to ask about the landlady. KW reported that law enforcement appeared to be staking out the building. One day a local BATF agent was parked in plain view across the street from the office and several state troopers had the building under surveillance.
25. A small, but distinct, part of Reger's client base were persons accused of controlled-substance-related offenses. Having the building in which their attorney's office was located under the surveillance of state and federal law enforcement was untenable.
26. Reger had a series of discussions with KW about the future of the practice. He proposed that they slowly close down his practice and leave the legal profession together. He could not imagine practicing with anyone other than KW assisting him.
27. Reger had several cases set for trial and he resolved to see those cases through to the end. He planned to take no new matter that would not wrap up before the end of 2015.
28. Cash flow became a significant problem because they were referring new business to other lawyers and some current clients were not paying their bills. He wanted to leave his current office space before the law enforcement's intermittent surveillance caused a problem for a client. Reger and KW decided to practice from their respective residences and meet face-to-face with clients elsewhere.
29. After Reger and KW moved, she told him that she had arranged for mail forwarding from their former office address to a new post office box. She arranged for phone and fax lines to go to her residence. They both had e-mail access from their homes.
30. The arrangement seemed ideal for KW who could stay at home with her family. According to Reger, all KW had to do was answer phones, get the bills out, keep the filing current, check the mail, check the fax machine at her home office, check the pick-up bin at the courthouse, make copies and occasionally draft a child support guidelines affidavit or set of initial disclosures. Reger would work on cases, return calls on substantive matters to clients, and work just as he had always done.
31. The arrangement appeared to be going well in the initial weeks. Then in late October he learned that clients were having trouble reaching him. In late October a lawyer called him about a domestic relations matter in which Reger had missed a hearing. In November he learned that KW was not responding to e-mail relating to a different client matter.
32. Reger met with KW in mid-November to discuss the issue of e-mails not being answered or forwarded to him and phone calls not being returned. KW alleged she had been having e-mail problems but she was returning all messages she had received. When Reger asked if she was overwhelmed and needed to focus on her personal life, KW started to sob and said she still wanted to work. He proposed a compromise wherein he took care of filing, getting the mail, checking the pickup bin at the courthouse, drafting all letters and pleadings, and getting bills out. KW assured him that she could handle the *30 phones, make copies for clients, and file documents with the court.
33. KW turned over six banker's boxes of files and records so that Reger could get them organized. By early December, the practice appeared to be back on track.
34. In late December 2014, a client had a custody situation erupt which threatened removal of four children from the home of their grandparents, following the murder of the children's mother. The situation required filing of emergency motions in Anchorage and service on an out-of-state relative.
35. Reger drafted the necessary documents on December 23, 2014. He asked KW to obtain the client's signature to affidavits and following signature and notarization, to file the custody case with the court. He provided her a check for the filing fee. Reger confirmed with KW at the end of the day that she had filed the pleadings and served the opposing party. She confirmed the next day that she had filed the case. Reger prepared more pleadings for the Anchorage case and KW assured him that they were filed and served on January 2, 2015.
36. The following week Reger called a judicial assistant in Anchorage with a question about the case and learned the court had received no filings from his office. Reger checked CourtView and saw no entries there. He checked and saw that the check for the filing fee had never cleared.
37. Reger met with KW on the evening of January 8, 2015. In answering a question about the recent filing, she looked him straight in the eye and lied. Reger terminated her services. He asked for her post office box key and her e-mail password. He asked for any files that might still be in her possession. He asked for a statement of what he owed on the loan so he could pay it back. Reger has had no subsequent contact with KW.
38. Following the meeting with KW, Reger began to contact clients and reviewed files to determine what had been left undone unbeknownst to him. He discovered clients had been unable to contact him despite leaving messages, texts or e-mail with KW. Reger worked with clients to provide information and to move matters forward.
39. Reger had been unaware that clients had been ignored and pleadings had not been turned over to him. Upon further investigation, Reger discovered two bar grievances had been filed against him.
40. Reger said KW never had check-writing authority or access to any law office accounts other than the office's petty cash fund.
41. KW did not dispute Reger's account of her work history. She denied she was fired, but said they mutually decided she should leave. KW declined to provide any information about the loan other than to say it was not a "joint practice situation." KW did not answer follow-up inquiries from the Bar.
ABA (Judge) v. Reger ABA File No. 2014D183
42. A superior court judge forwarded log notes from hearings in two civil proceedings to Bar Counsel to take action if deemed appropriate.
Case No. 4FA-13-1518CI
43. Reger represented TS in a post-conviction relief matter that was dismissed after Reger failed to file an opposition. Reger was unaware that the State had filed a summary judgment motion in the action. He relied on KW to provide him with his mail and he never saw the pleading.
44. Following the dismissal, the court appointed counsel to represent TS and Reger offered to help to the extent it was needed. The case was reopened on July 23, 2014.
45. On July 31, 2014, Fairbanks police were alerted to an alleged assault by TS and a vehicular pursuit began. After a short chase, the police found TS in his car, dead from a self-inflicted gunshot wound.
46. Following TS's death, the court dismissed the case without any judicial finding of ineffective assistance.
47. Reger earlier refunded a $5,000 fee that TS had paid him.
*31 Case No. 4FA-13-1989CI
48. Reger represented TJ in two proceedings: a domestic violence protective order case and a child custody matter until TJ fired him.
49. TJ, a recovering alcoholic, stipulated to entry of a domestic violence protective order. Reger arranged to file an answer to a child custody complaint at a scheduled custody hearing. However, Reger missed the hearing and the court entered default.
50. On the day of the hearing, KW left the office without telling Reger, who was unaware that she was not monitoring the office phone. When the court called his cell phone, he ignored it because the caller ID indicated "unknown" caller.
51. After entry of default, the hearing magistrate took testimony on the child custody issue and entered proposed findings and conclusions. The recommendations were served on the parties who had ten days to object. Reger entered no objections to the proposed findings. The court entered the Master's Findings of Fact on September 22, 2013.
52. When Reger realized what happened, he asked KW to arrange an appointment with TJ. KW told Reger a few times that after a meeting was scheduled TJ would cancel and reschedule. Later he learned that TJ tried to reach him on numerous occasions, but KW misreported what occurred and also failed to pass on messages.
53. In January 2014, TJ hired new counsel. Reger asked KW to copy and deliver the file to new counsel, but he was unaware that she did not do it until much later.
54. At an August 12, 2014, hearing to set aside the default, a superior court judge laid the blame for failure to appear at the default hearing and entry of default squarely on Reger. His failures were sufficient reason to set aside default and to assign a custody investigator to the re-opened custody proceeding.
55. The court ordered TJ to pay the attorney fees and costs his ex-wife incurred responding to TJ's motion to set aside the default.
56. In October 2014, TJ's attorney asked Reger to cover the attorney fees and costs bill for setting aside the default and to return the retainer that TJ had advanced. Reger covered the fees and costs that resulted from the entry of default.
ABA File No. 2014D223 (FA Referral)
57. JG paid $1,500 to Reger Law Office for help to enforce the terms of an Idaho divorce judgment entered between JG and her former husband.
58. JG promptly provided information to KW. Despite persistent follow up with phone calls and e-mail from JG, the matter did not progress. JG had a deadline to file papers to access her ex-husband's retirement, but nothing was filed.
59. After time passed with no visible results, JG hired a new firm to handle the matter. New counsel asked for an accounting and the remaining balance in trust, which Reger did not provide.
60. JG filed a petition for fee arbitration, requesting a refund of the $1,500 she advanced for legal services. Reger did not respond to the fee arbitration petition nor appear at the hearing. The fee arbitrator ordered Reger to refund $1,500 to JG and referred the matter to Bar Counsel for disciplinary review.
61. In response to Bar Counsel, Reger explained that after his initial meeting with JG, he learned that property and child support issues were being re-litigated in Idaho. He advised JG that the Idaho litigation should be complete before registering the decree in Alaska.
62. When he learned the Idaho litigation had concluded, he took steps to register the updated decree by instructing KW to obtain a copy. He prepared pleadings and wrote a check for the filing fee. He instructed KW to handle service on the husband who lived out-of-state. Problems allegedly arose with the process server and Reger told KW to find another. KW later told him the ex-husband *32 had moved and she needed a new address for the process server.
63. Once he became aware of KW's deception, Reger learned that KW did not file JG's case and KW lied to him and JG about various attempts to serve the ex-husband. Reger assumed that KW intercepted the letters from new counsel and the fee arbitration petition because he never saw them.
64. Reger paid JG the $1,500 awarded to her by the fee arbitration committee.
DISCIPLINARY VIOLATIONS
Count One
Rule 1.3
Diligence
65. Alaska Rule of Professional Conduct 1.3 requires a lawyer to "act with reasonable diligence and promptness in representing a client."
66. Reger violated Rule 1.3 by not meeting deadlines and failing to appear at legal proceedings. He failed to actively carry matters forward and failed to carry through to conclusion matters related to the representation.
Count Two
Rule 1.4
Communication
67. Alaska Rule of Professional Conduct 1.4 requires a lawyer to keep clients reasonably informed about the status of a matter and promptly respond to reasonable requests for information.
68. Reger violated Rule1.4 when he failed to notify clients of pending proceedings and failed to tell his client that a case had been dismissed due to his failures. Although a nonlawyer may assist in client communications with proper supervision, Reger violated Rule 1.4 by routinely not taking calls, not returning calls and turning over client communication to KW.
Count Three
Rule 5.3
Responsibilities Regarding Non-lawyer Assistants
69. With respect to a nonlawyer employed by a lawyer, Rule 5.3(a)(2) requires the lawyer with direct supervisory authority over the nonlawyer to make "reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer."
70. When Reger delegated duties to his nonlawyer assistant, he remained responsible for ensuring that those duties were performed competently, diligently, and compatibly with his own ethical obligations. Reger violated Rule 5.3(a)(2) by failing to supervise KW adequately.
Count Four
Rule 5.4
Professional Independence of a Lawyer
71. Rule 5.4(a) prohibits a lawyer from paying a nonlawyer a portion of the legal fee generated by any particular matter unless a narrow exception to the rule applies.
72. Reger violated the rule's ban on fee-sharing when he arranged to share profits 50-50 with KW, first as a loan repayment and then as a bonus.
Count Five
Rule 1.15
Safekeeping Property
73. Alaska Rule of Professional Conduct 1.15(d) requires a lawyer to promptly deliver funds to the client that the client is entitled to receive and to promptly render a full accounting regarding the funds.
74. Reger violated Rule 1.15(d) when he failed to account to JG upon request and failed to deliver funds to JG's new counsel.
*33 Count Six
Rule 1.16
Declining or Terminating Representation
75. Alaska Rule of Professional Conduct 1.16(d) sets out steps a lawyer shall take upon termination of representation.
76. Reger violated Rule 1.16(d) when he failed to surrender the client files promptly and failed to refund the advanced fee that had not been earned after clients TJ and JG hired new counsel and terminated Reger's services.
SANCTION ANALYSIS
77. The American Bar Association Standards for Imposing Lawyer Sanctions (1986) ("ABA Standards"), adopted in In re Buckalew, 731 P.2d 48 (Alaska 1986), and reported decisions of the Alaska Supreme Court, govern the sanctions for respondent's misconduct.
78. Under ABA Standard 3.0, the following factors are to be considered in imposing sanctions after a finding of lawyer misconduct:
(a) the duty violated;
(b) the lawyer's mental state;
(c) the actual or potential injury caused by the lawyer's misconduct;
and
(d) the existence of aggravating or mitigating factors.
79. These factors are addressed in a three part methodology: 1) determine the first three factors; 2) determine recommended sanction; and 3) determine whether aggravating or mitigating circumstances exist. In Re Schuler , 818 P.2d 138, 140 (Alaska 1991).
Part 1: Duty Violated; Lawyer's Mental State;
Actual or Potential Injury
A. Duty Violated
80. By violating Rules 1.3, 1.4, and 1.15, Reger violated duties owed to his clients. By violating Rules 5.3, 5.4 and 1.16, Reger breached duties owed to the profession. See ABA Standards §§ 4.5 and 7.1.
B. Mental State
81. Under the ABA standards:
" 'Intent' is the conscious objective or purpose to accomplish a particular result."
" 'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result."
" 'Negligence' is the failure of the lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation."
82. Despite Reger's belief that KW was honest and capable, he had a duty to reasonably supervise her performance of tasks to avoid the neglect and failure to communicate that occurred. His failure to provide adequate oversight was done with a mental state of negligence. His failure to account and to return client files promptly was done with a mental state of negligence. His arrangement to share profits with KW was done knowingly.
C. Actual or Potential Injury
83. Reger's failure to file responsive pleadings led to dismissal of TS's post-conviction relief claim and TJ's custody case, threatening their legal positions until other counsel entered appearances and got the cases back on track. Unreasonable delay in JG's case caused needless anxiety and delay. Reger's failure to participate in hearings and to return client calls undermined client confidence in the legal profession.
84. Sharing profits on a 50-50 basis with KW threatened Reger's independence in exercising his professional judgment on behalf of his clients.
*34 Part 2: Recommended Sanction under ABA Standards
85. ABA Standards § 4.0 sets out the sanctions for violations of duties owed to clients. Having agreed to represent the client, Reger had duties to be diligent in performing services and to respond promptly to client requests for information, Section 4.42 recommends suspension when "a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." Reger and Bar Counsel agree that suspension is appropriate for Reger's neglect as evidenced by missing hearings, failing to file responsive pleadings, and failing to communicate with his clients.
86. Section 4.1 governs Rule 1.15 violations for failure to preserve client property. Bar Counsel and Reger agree that suspension is appropriate for his failure to account and to return unearned fees promptly.
87. Section 7.0 governs violations of duties owed to the profession, including the duty to supervise employees. Reger and Bar Counsel agree that suspension is appropriate under section 7.2 due to the length of time that KW was not monitored in the commission of her duties and due to the client harm resulting from her failure to pass on messages and mail to Reger.
88. Reger and Bar Counsel agree under Section 7.2 a suspension is appropriate for Reger's knowingly sharing fees with KW in violation of a duty owed to the profession.
89. Reger and Bar Counsel agree that Reger's negligent failure to withdraw his representation and return client files merits a reprimand under ABA Standard 7.3.
Part 3: Aggravating and Mitigating Factors
90. ABA Standards § 9.0 sets out factors that may be considered in aggravation and mitigation. Factors that serve to aggravate Reger's conduct are:
(a) a pattern of misconduct (9.22(c) );
(b) multiple offenses (9.22(d) ); and
(c) substantial experience in the practice of law, 9.22(i).
(Reger was admitted to the Bar in 1998.)
91. Factors that serve to mitigate Reger's misconduct include:
(a) absence of a prior disciplinary record, 9.32(a);
(b) absence of a dishonest or selfish motive, 9.32(b);
(c) timely good faith effort to make restitution or to rectify consequences of misconduct, 9.32(e);
(d) full and free disclosure to disciplinary board or cooperative attitude toward proceedings, 9.32(e); and
(e) remorse, (9.32) (l).
92. The parties agree that mitigating factors minimize the aggravating circumstances of the pattern misconduct and multiple offenses because Reger made a concerted effort to reach clients and cure lapses that occurred during the period that he failed to supervise KW.
OTHER AUTHORITY
93. Reger and Bar Counsel have considered the following unreported cases in which professional discipline was imposed by the Alaska Supreme Court for rule violations, including failure to supervise a paralegal, neglecting clients, and failure to account. In re Powell , Supreme Court No. S-14485 (Order of 11/10/11) (attorney suspended for six months, with 90 days to serve, 90 days stayed, for unethically sharing legal fees and participating in a de facto law partnership with a nonlawyer who she failed to supervise properly.) The court also publicly censured attorney Powell. In re Austin , Supreme Court No. 15605 (Order of 8/7/14)(attorney suspended from practice of law for three years, with one year stayed for failing to supervise her paralegal, resulting in 12 clients filing grievances against her for neglect and failure to account.)
STIPULATED DISCIPLINE
94. Subject to approval by the Disciplinary Board of the Bar and by the Alaska Supreme Court, Reger and Bar Counsel agree that Reger will be suspended for six months under Bar Rule 16(a)(2).
*35 95. Reger will pay $1,000 in costs and attorney fees to the Alaska Bar Association within 60 days of entry of the Court's order.
96. Reger will complete six hours of continuing legal education in the area of law office management and three hours in legal ethics as a condition prior to seeking reinstatement to the practice of law.?
DATED this 12th day of October, 2017, at Anchorage, Alaska.
ALASKA BAR ASSOCIATION
/s/ LOUISE R. DRISCOLL
Louise R. Driscoll
Assistant Bar Counsel
Bar Member No. 8511152
DATED this 12th day of October, 2017, at Fairbanks, Alaska.
/s/ LAWRENCE F. REGER
Lawrence F. Reger
Respondent
Bar Member No. 9811081
DATED this 12th day of October, 2017, at Fairbanks, Alaska.
/s/ JASON A. WEINER
Jason A. Weiner
Attorney for Respondent
Bar Member No. 9906031
CONSENT OF RESPONDENT
Respondent hereby consents, pursuant to Alaska Bar Rule 22(h), to the discipline stipulated above and states that this consent is freely and voluntarily given and is not the subject of any coercion or duress and that Respondent admits to the allegations set forth above.
DATED this 17th day of October, 2017, at Fairbanks, Alaska.
/s/ LAWRENCE F. REGER
Lawrence F. Reger
Respondent
Bar Member No. 9811081
SUBSCRIBED AND SWORN to before me this 17th day of October, 2017.
/s/
(SEAL) Notary Public in and for Alaska
My commission expires:_________

The stipulation has been edited to delete identifying references to others, for clarification, and to conform to supreme court technical requirements; attachments to the stipulation have been removed.

Cf. In re Miles , 339 P.3d 1009, 1018 (Alaska 2014) ("We independently review the entire record in attorney discipline proceedings, though findings of fact made by the Board are entitled to great weight." (quoting In re Shea , 273 P.3d 612, 619 (Alaska 2012) ) ).

Id.